[Civ. No. 2911. Third Appellate District.—March 8, 1926.]

C. W. BURNER, Respondent, v. AMERICAN BAR QUARTZ MINING COMPANY (a Corporation), Appellant.

[1] SALES—BREACH BY VENDEE OF CONTRACT TO RECEIVE AND PAY FOR LUMBER—REMEDIES OF VENDOR.—A vendor, upon a vendee's breach of a contract to receive and pay for lumber, would ordinarily have three remedies: 1. Standing strictly upon the sale, retain the property for the vendee and sue the vendee for the purchase price; 2. Acting as agent of the vendee, the vendor might sell the property and then sue to recover the difference between the contract price and the price obtained on a resale;

---

1. See 22 Cal. Jur. 1051; 24 R. C. L. 86.

3. The vendor might treat and keep the property as his own and recover from the vendee the difference between the contract price and the market price at the time and place of delivery.

[2] ID.—REMEDY—PLEADING—DELIVERY—EVIDENCE.—A complaint by a vendor to recover damages for a breach by the vendee to receive and pay for lumber ordered by the latter from the former, which does not distinctly show the remedy sought by the vendor, is not obnoxious to a general demurrer; and the omission from such complaint of an allegation that the vendor had tendered delivery of the lumber to the vendee, while technically rendering the complaint subject to demurrer, is not in any sense prejudicial, where the evidence shows that the vendee explicitly refused to receive the lumber after the vendor had already sawed the same.

[3] ID.—REFUSAL OF VENDEE TO RECEIVE LUMBER—OFFER OF PERFORMANCE BY VENDOR UNNECESSARY.—The vendee having explicitly refused to receive the lumber contracted for, the vendor, by the terms of section 1440 of the Civil Code, was not required to make any offer of performance on his part, as provided for in section 1439 of the Civil Code, before beginning his action for the recovery of damages for the failure of the vendee to receive and pay for the lumber.

[4] ID.—AMOUNT OF LUMBER ORDERED—VERDICT—EVIDENCE—APPEAL. In an action by a vendor to recover damages for the breach by the vendee to receive and pay for lumber ordered by the latter from the former, the verdict of the jury must be accepted on appeal as conclusive upon the point as to the amount of lumber ordered, where there is sufficient testimony to support the verdict.

---

(1) 35 Cyc., p. 520, n. 16, p. 521, n. 17, p. 527, n. 67, p. 537, n. 34, p. 583, n. 46, 48, p. 592, n. 53, p. 598, n. 90.    (2) 4 C. J., p. 1170, n. 34; 31 Cyc., p. 282, n. 20.    (3) 4 C. J., p. 1168, n. 98, p. 1170, n. 33.    (4) 4 C. J., p. 858, n. 3.

APPEAL from a judgment of the Superior Court of Placer County.   J. B. Landis, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Hiram W. Johnson, Jr., and Carl E. Day for Appellant.

F. P. Tuttle, Sr., F. P. Tuttle, Jr., and Dixon L. Phillips for Respondent.

---

3.   See 22 Cal. Jur. 1054.
4.   See 2 Cal. Jur. 919; 2 R. C. L. 194.

PLUMMER, J.—Action by plaintiff to recover the sum of $2.500 as damages for failure of the defendant to receive and pay for 65,000 board feet of lumber. Plaintiff had judgment for the sum of $1,400. Defendant appeals. The complaint, among other things, alleges as follows:

"That during the year 1923 plaintiff and defendant made and entered into a contract or agreement as follows: defendant ordered from plaintiff 130,000 (One hundred and thirty thousand) board feet of lumber, to be into such sizes and lengths as defendant might desire, and defendant agreed to pay for the same at the rate of $35.00 per thousand feet, and to be delivered at the mill of plaintiff. Plaintiff accepted said order as aforesaid.

"That plaintiff immediately thereafter proceeded to saw and cut said lumber, and defendant proceeded to take delivery of the same and hauled away from said mill 65,000 board feet of lumber.

"That defendant has failed, neglected and refused, and still refuses to take delivery of the balance of said lumber so ordered by him, to-wit, 65,000 board feet, and has failed, neglected, and refused and still refuses to pay plaintiff for the balance of said lumber so ordered by it.

"That by reason of the aforesaid acts of said defendant, plaintiff has been damaged in the sum of Two Thousand five hundred ($2500.00) Dollars, and neither said sum or any part thereof has been paid."

To this complaint the defendant interposed a demurrer worded as follows:

"That said complaint does not state facts sufficient to constitute a cause of action, and especially and particularly in this: (1) That the alleged executory contract or agreement is insufficient and indefinite as to the kind, character or quality of lumber to be cut, or the dimensions thereof; (2) That it does not state whether or not the balance of the lumber, to wit, 65,000 feet, was cut.

"That said complaint is uncertain, for the reasons and upon the grounds hereinbefore assigned, and in addition thereto as follows: (1) That it cannot be determined therefrom what is meant or intended by the allegation in paragraph '11' 'to be into such lengths and sizes as defendant might desire'; (2) That it cannot be ascertained or deter-

mined therefrom whether the alleged refusal of defendant to accept the balance of the lumber was before or after the same had been cut; (3) That said complaint is indefinite as to whether plaintiff relies upon the alleged contract, or its alleged breach."

The defendant's demurrer being overruled, an answer was filed in which the defendant, after making denials, for further defense alleged as follows:

"That in the year 1923, said plaintiff and this defendant entered into a mutual agreement whereby the former agreed to manufacture and deliver at his mill, in said county and state, and defendant agreed to accept and pay therefor at the rate of thirty-five dollars per thousand board feet, all necessary and suitable building lumber for the erection and construction of certain buildings, then in contemplation, and about to be constructed and erected by defendant, upon its mining properties nearby the mill and plant of the plaintiff; that there was no agreement or understanding either as to the amount that would be required for such construction, or that the plaintiff would manufacture or defendant receive, accept, and pay for, other than plaintiff would manufacture and deliver at his mill, as aforesaid, necessary and suitable lumber for the construction and erection of such buildings."

By reference to the allegations of the complaint and the paragraph of the defendant's answer herein set forth, it will be seen that the only issues between the parties is as to the number of feet of lumber ordered, the refusal of the defendant to accept and pay for all of the lumber, and the amount of damages.

[1] Under the circumstances pertaining to this case the vendor of the lumber would ordinarily have three remedies: 1. Standing strictly upon the sale, retain the property for the vendee and sue the vendee for the purchase price; 2. Acting as agent of the vendee, the vendor might sell the property and then sue to recover the difference between the contract price and the price obtained on a resale; 3. The vendor might treat and keep the property as his own and recover from the vendee the difference between the contract price and the market price at the time and place of delivery. (*Cuthill* v. *Peabody,* 19 Cal. App. 304 [125 Pac. 926].)

Section 3311 of the Civil Code provides: "The detriment caused by the breach of a buyer's agreement to accept and

pay for personal property, the title to which is not vested in him, is deemed to be: 1. If the property has been resold, pursuant to section three thousand and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale; or, 2. If the property has not been resold in the manner prescribed by section three thousand and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it.''

And in estimating damages under such circumstances the rule for ascertaining the same is set forth in section 3353 of the Civil Code. In the case at bar the property was not sold in accordance with the provisions of section 3049 of the Civil Code and the action is one simply for damages, the plaintiff treating the contract as rescinded and the title to the property as not having passed.

[2] The complaint is by no means a model, but the demurrer, as a pleading, shows no improvement. The objection argued that the complaint does not distinctly show the remedy sought by the plaintiff is very well answered in the case of *Lillie* v. *Weyl-Zuckerman & Co.*, 45 Cal. App. 607 [188 Pac. 619]. There the three remedies were being considered and it was contended that, as the contract was silent as to the method plaintiff adopted, it failed to state a cause of action. The court said: ''Conceding the complaint was uncertain in the respect named, nevertheless it was not obnoxious to the general demurrer, for the reason that, under the allegations made and in the absence of any special objection to the complaint, plaintiff might introduce evidence tending to prove that upon defendant's breach he adopted, as he was entitled to do, any one of the three courses open to him. The question as to how or in what manner the damage arose, other than as appears from the general allegations, is the subject of evidence rather than of pleading.'' The complaint in that case was similar to the one at bar, save and except it did contain the further allegation that the plaintiff had tendered delivery of the merchandise contracted for by the defendant. The omission of such an allegation in the complaint in the case at bar, while techni-

cally rendering the complaint subject to demurrer, is not in any sense prejudicial, as it appears from the evidence that the defendant had explicitly refused to receive the 65,000 feet of lumber involved in this case. **[3]** Hence, by the terms of section 1440 of the Civil Code the plaintiff was not required to make any offer of performance on his part, as provided for in section 1439 of the Civil Code, before beginning this action. It does appear from the testimony that the plaintiff had already sawed the 65,000 feet of lumber and had the same on hand ready for delivery. It further appears from the testimony that after the defendant had refused to accept further delivery of the lumber, the plaintiff sold 35,000 feet thereof at the average price of $25 per thousand, and that his loss on that number of feet of lumber amounted to the sum of $350, for which he had judgment. As to the remaining 30,000 feet of lumber, it appears from the testimony that efforts were made to sell the same and that it had no market value. It appears that the lumber was of a quality suitable only for the building of flumes and therefore not commercially merchantable lumber. Our attention has not been called to any testimony questioning these facts. Under such circumstances, the court allowed the contract price, to wit, $1,050, the amount of the damages. After 65,000 feet of lumber had been received by the defendant it appears from the testimony that the superintendent of the defendant notified the plaintiff that they did not want any more lumber and that they were through with the plaintiff. The testimony of the plaintiff concerning the value of the lumber and its size is as follows:

"Q. Referring to the sizes that you cut there, Mr. Burner— A. The sizes— Q. Were they commercial sizes? A. No. Q. Cut especially for this yard? A. Especially for flume lumber. Q. Did that lumber have any market value? A. It did not, practically no value for market. Q. You tried subsequently to sell it? A. I did—tried and in fact tried in every way to dispose of it. Q. You did dispose of some of it? A. Yes, sir—one thousand feet, here and there. A. And approximately how much did you dispose of? A. I disposed of somewhere around thirty-five thousand feet. Q. And what was the average price for that? A. Twenty-five dollars was the best I could get for it"; also,

"Q. With whom was the contract made for the hundred and thirty thousand feet, and where? A. It was a verbal agreement. Mr. Wilson wanted at least one hundred thousand feet to start with, and Mr. Duffey said they would want at least thirty thousand feet of building material. . . . A. The bigger part of the Mining Company ordered was red fir, which is not marketable, very hard to dispose of red fir to anyone who is not building flumes. The lumber yards refused to buy it."

No question appears to have been raised by the testimony as to the fact that the plaintiff had sawed and had on hand ready for delivery the 65,000 board feet of lumber ready for defendant, nor is there any question raised as to the market value, or of the fact of there being no market value of the lumber not accepted and paid for by the defendant. [4] There is some question as to the amount of lumber ordered, whether 100,000 feet or 130,000 board feet, but as there is sufficient testimony to support the verdict of the jury that 130,000 board feet of lumber were ordered, we must accept the verdict of the jury as conclusive upon this point. The appellant has argued at considerable length that as the plaintiff was unable to sell 35,000 board feet of the lumber in question for an average price of $25 per thousand feet, that such price was thereby fixed as the market value of the unsold lumber. This, however, overlooks the fact that the lumber was cut for a specific purpose, was cut in a country where the market for such lumber is limited, and if not accepted and paid for by the person creating the limited market, it would practically have no market value. It might have a value for special use, if anyone could be found having use for such lumber, but it does not appear from the testimony that any such facts existed. The fact of there being no market value for the lumber, as testified to by the plaintiff, was left entirely uncontroverted by the defendant, or, at least, our attention has not been called to any testimony contravening the fact of the unaccepted lumber having no market value. The evidence showing that the 65,000 feet of lumber was sawed, that the defendant had notified the plaintiff that the same would not be received, and as the cause was tried upon issues which involved the real merits of the case, we think this is an instance where the provisions of section 4½ of article VI of the state constitution apply,

where it is said that no judgment shall be set aside or new trial granted for any error as to any matter of pleading, etc., which has not resulted in a miscarriage of justice. The issues tried out in this case and determined by the jury and the real merits involved in the controversy between the plaintiff and defendant would not have been affected or altered in any particular had all the technical allegations insisted upon by the appellant as necessary to constitute a sufficient complaint been inserted therein. The case of *Donlon* v. *Meyer,* 35 Cal. App. 225 [169 Pac. 447], sets forth the rule that we have followed herein showing when offer of performance or pleading offer of performance is unnecessary.

The judgment of the trial court is affirmed.

Pullen, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1926.